**Peter J. BRENNAN, Secretary of Labor, Petitioner,**

v.

**CHICAGO BRIDGE AND IRON COMPANY and Occupational Safety and Health Review Commission, Respondents.**

**No. 74–1214.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 3, 1975.

Decided April 22, 1975.

---

Stephen F. Eilperin and Eloise E. Davies, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Jeremiah Marsh, Chicago, Ill., William M. Pearce, III, David Lynn Whitt, Oak Brook, Ill., for respondents.

Before PELL, STEVENS and DOYLE,* Circuit Judges.

PER CURIAM.

The Secretary of Labor here appeals an order of the Occupational Safety and Health Review Commission which in course of review of a citation issued by the Secretary of Labor pursuant to 29 U.S.C. § 658 vacated the citation by a two to one vote, ruling that it had not been issued with "reasonable promptness." Our task is to determine whether the Secretary complied with the "reasonable promptness" standard in 29 U.S.C. § 658(a).[1]

The purpose of the citation was to assess a penalty. The fatal injury to a workman occurred February 1, 1972. On this date an employee of Chicago Bridge and Iron Company was engaged in welding a chemical tank approximately 80 feet above ground level when his clothing caught fire. This fire could not be extinguished and was fatal to the employee. The facts showed that, contrary to the Secretary's regulation requiring suitable fire extinguishing equipment to be immediately available in the work area and maintained in a state of readiness for instant use (29 C.F.R. § 1926.-352(d)), the nearest fire extinguisher was located on the ground some 50 feet from the tank. Inspection of the site was made on February 7, 1972, and the Occupational Safety and Health compliance officer forwarded a preliminary draft of a citation to the Area Director on February 8, 1972. The Area Director in turn issued a citation and penalty assessment on March 10, 1972.[2] It was not, therefore, until four weeks and two days after submission of the preliminary draft that a citation was issued. Nevertheless, the Administrative Law Judge ruled that the citation and penalty assessment had satisfied the "reasonable promptness" standard and further held that Chicago Bridge had committed a serious violation of the Act which justified the $600.00 penalty. As previously noted, the Occupational Safety and Health Review Commission ruled that the citation had not been issued with "reasonable promptness."[3] It failed to reach the issue as to whether the conduct violated the regulations.

The rationale of the majority of the Commission was that the legislative history of the Act contemplated the issuance of a citation within 72 hours from the time the Secretary formed a belief that a violation had occurred. It went on to hold that the Area Director ordinarily requires two to three weeks to act on recommendations of compliance officers. Its further ruling was that the failure of the Secretary to explain the

---

* Circuit Judge William E. Doyle of the Tenth Circuit is sitting by designation.

1. This provision in pertinent part reads:
   "If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 654 of this title, or any standard, rule or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, he shall with reasonable promptness issue a citation to the employer."

Section 658(c) provides:
   "No citation may be issued under this section after the expiration of six months following the occurrence of any violation."

2. The Area Director is the "authorized representative" of the Secretary for the issuance of citations. 29 C.F.R. § 1903.14.

3. The Commission's decision is reported at 1 OSHC 1485 (1974).

additional one to two week delay justified its determination that the citation was issued more than 72 hours after the Director formed his belief that the regulations had been violated, and that this was not "reasonable promptness."

Inasmuch as the Commission's decision was largely influenced by legislative history, we first examine this source. The Senate version of the Act required that the citation issue "forthwith."[4] The House version provided that a citation issue 45 days from the occurrence of the alleged violation, but also made provision for extending the period to a maximum of 90 days from such occurrence. 116 Cong.Rec. 38,718 (1970). The Conference Committee rejected both of these approaches and adopted the "reasonable promptness" standard. Thus, the Conference Committee did not approve of the mandatory time period imposed by the word "forthwith" nor the absolute limitation period of 45 days (the House version). The sole *absolute* limitation was the six-month limitation set forth in § 658(c).

The Conference Report stated that "in the absence of exceptional circumstances any delay is not expected to exceed 72 hours *from the time the violation is detected by the inspector.*" Conference Report No. 91–1765, 91st Cong., 2d Sess. (1970), 1970 U.S.Code Cong. & Admin. News, pp. 5228, 5234 (emphasis added). This 72-hour feature was repeated by the House conferees in explaining the changes to the House. 116 Cong.Rec. 41,976 (1970). From this we are urged to uphold the Commission's ruling that, absent exceptional circumstances, "reasonable promptness" is equivalent to 72 hours from the time the Secretary or his authorized representative determines a citation should be issued.

While the language of § 658(a) seems to indicate that the time for determining "reasonable promptness" should be meas-ured from the instant the Area Director concludes that a citation shall be issued, for several reasons we cannot believe that Congress intended the Commission to establish such a prophylactic rule based on this starting point.

First, the Commission's rule presupposes that the Area Director's activities with respect to an alleged violation can be compartmentalized into discretionary and ministerial components, and that the exact time at which the decision to issue a citation is made can be determined. As dissenting Commissioner Cleary noted, however:

> [T]he discretionary duties of the Secretary under section 9(a) [42(29) U.S.C. § 658(a)] are not completed until there is a signature by the Area Director authenticating his delegation of authority from the Secretary.
>
> . . . [T]he signing of a citation by an Area Director is an act which is not severable from the overall investigatory process.

1 OSHC at 1488.[5]

Second, if the time period commences with the mental decision to issue a citation, a question of fact may arise in any case in which the Area Director fails to issue a citation within 72 hours of the submission by the compliance officer. In such cases, the cited company will always be able to assert the affirmative defense of lack of "reasonable promptness" and presumably could subpoena the Area Director and his records to determine when the decision in fact was made. There is no reason to believe that such a disruption of the administrative process was contemplated by Congress. A rule which fosters litigation of such an issue should certainly be avoided. As the Supreme Court stated in a related context in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136:

---

4.  S. 2193, 91st Cong., 2d Sess. § 9(a).

5.  Presumably the Area Director may review and reconsider any decision to issue a citation right up until the very moment he signs and delivers the citation to the employer. To sug-gest that the decisional process comes to a complete halt at some time prior to delivery is both overly simplistic and contrary to the responsible conduct the Commission should expect of the Secretary and his authorized representatives.

The Court may require the administrative officials who participated in the decision to give testimony explaining their action. Of course, such inquiry into the mental processes of administrative decision makers is usually to be avoided. United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

Finally, in order to avoid the necessity of testifying in every action as to the exact moment he made the decision to issue a citation, and to cloak himself in the presumption of administrative regularity, the Area Director might simply adopt a practice of noting on the citation a time less than 72 hours prior to the issuance time as the time of his final decision.[6] To the extent that such a practice would prevail over a "reasonable promptness" defense, the protection supposedly afforded the employees by the 72-hour rule would be illusory.[7]

We hold, therefore, that the rule set forth in the Commission's decision that § 658(a) requires the Secretary or his authorized representative to issue a citation within 72 hours of the time the decision to so issue is reached is unacceptable because it is not supported by the statute itself or by its legislative history and must be invalidated.

We do not hold, however, that the Commission is powerless to fashion a rule giving the "reasonable promptness" language some effect.[8] In other words, we find it unnecessary to decide, as the Secretary argues here, that the phrase is merely hortatory, precatory, or directive. We simply conclude that the test for determining "reasonable promptness" used in this case was improper.

The order entered by the Commission is, accordingly, vacated, and the case is remanded to the Commission for a decision on the merits.

DOYLE, Circuit Judge, concurs in the result.

**6.** This is not to suggest that the Area Director will be falsely stating his decision time, for, as discussed above in n. 5, presumably the decision to issue a citation is open for review and reconsideration right up to the moment the citation is signed and mailed to the alleged violator.

**7.** Even if we were to determine that the Commission has chosen an appropriate benchmark for determining "reasonable promptness," we find no support for the Commission's conclusion that the legislative history of the Act supports a 72-hour time period. As noted above at pp. 3–4, the Congressional reference to 72 hours was in connection with the expected time between an inspection and the issuance of a citation. The realities of administering the Act—over 60 million employees are covered by the Act but the Secretary has only 500 inspectors; nevertheless over 50,000 citations are issued annually—have demonstrated the difficulty of reaching the desirable expectation.

**8.** Administrative Law Judge Goldstein in this case evaluated the approximately one-month delay from the date of the inspection until the date of issuance and concluded that it was "reasonable." (App. 30).