[Civ. No. 16367. Third Dist. Dec. 16, 1977.]

DONALD VIAL, as Director, etc., et al.,
Plaintiffs and Appellants, v.
CALIFORNIA OCCUPATIONAL SAFETY AND
HEALTH APPEALS BOARD, Defendant and Respondent;
PACIFIC LUMBER COMPANY,
Real Party in Interest and Respondent.

■

**COUNSEL**

Evelle J. Younger, Attorney General, and Carol Hunter, Deputy Attorney General, for Plaintiffs and Appellants.

Robert D. Peterson for Defendant and Respondent.

Lloyd A. Carlson for Real Party in Interest and Respondent.

**OPINION**

**PARAS, J.**—The Director of the California Department of Industrial Relations (hereinafter Director) and the Division of Industrial Safety (hereinafter Division) appeal from an order of the superior court denying their petition for writ of mandate. The question is whether a citation issued by the Division more than two months after one of its representatives inspected the site of a fatal, work-related accident, was

issued with "reasonable promptness," within the contemplation of section 6317[1] of the California Labor Code.[2]

Section 6317 was enacted as part of the California Occupational Safety and Health Act of 1973[3] (hereinafter Cal/OSHA), a statutory scheme avowedly created "for the purpose of assuring safe and healthful working conditions for all California working men and women. . . ."[4] It came in response to earlier federal legislation[5] (hereinafter Fed/OSHA) covering the same subject matter but suggesting that states adopt "state occupational safety and health plans"[6] and thereby assume primary

---

[1]At the time of the instant proceedings, section 6317 provided:

"If, upon inspection or investigation, the division believes that an employer has violated any standard, rule, order, or regulation established pursuant to Chapter 6 (commencing with Section 140) of Division 1, or any standard, rule, order, or regulation established pursuant to this part, it shall *with reasonable promptness* issue a citation to the employer. Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the code, standard, rule, regulation, or order alleged to have been violated. In addition, the citation shall fix a reasonable time for the abatement of the alleged violation.

"In the event the violations found in an inspection or investigation do not have a direct relationship upon the health or safety of an employee a 'notice' in lieu of citation may be issued . . . .

"The division may impose a civil penalty against an employer as specified in Chapter 4 (commencing with Section 6423) of this part.

"No citation or notice shall be issued by the division for a given violation or violations after six months have elapsed since occurrence of the violation.

"The director shall prescribe procedures for the issuance of a citation or notice.

"The division shall prepare and maintain records capable of supplying an inspector with previous citations and notices issued to an employer." (Italics added.)

[2]All statutory references hereinafter are to the California Labor Code, unless otherwise indicated.

[3]Section 6300 et seq.

[4]Section 6300, the prologue to the act, provides in full:

"The California Occupational Safety and Health Act of 1973 is hereby enacted for the purpose of assuring safe and healthful working conditions for all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions, and by providing for research, information, education, training, and enforcement in the field of occupational safety and health."

[5]Federal Occupational Safety and Health Act of 1970, 29 United States Code Annotated section 651 et seq.

[6]29 United States Code Annotated section 667, subdivision (b), provides: "Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement."

jurisdiction within their borders over safety and health matters at the workplace.[7]

The pertinent facts, as set forth in the findings of the trial court, are as follows. On January 17, 1975, a representative of the Division's field office in Eureka inspected a place of employment maintained in Scotia, Humboldt County, California by Pacific Lumber Company (hereinafter Company). The inspection was occasioned by a fatal accident suffered by a Company employee the previous day. Subsequent to the inspection, the representative requested a report from the county coroner in Eureka; the report arrived in the Division's Eureka office approximately 13 days later. In the meantime, the Eureka office, manned by two safety engineers only, had to service four employee complaints which by Division policy were entitled to priority.[8]

On February 20, 1975, the preliminary paperwork relative to the investigation was forwarded from Eureka to the Division's Santa Rosa office for review by the Division's district manager. Division policy required such review, and approval of all preliminary reports and drafts, before issuance of a citation. The district manager contacted the Division's legal department to clarify the applicability of construction or general industrial safety orders to the Company's premises, and made a personal visit to the Eureka coroner's office. A citation ultimately issued on March 18, 1975, charging Company with a "serious violation"[9] of

[7]The chaptered version of the Assembly Bill which created Cal/OSHA (Assem. Bill No. 150 (1973-1974 Reg. Sess.)) contains the following explanation for the bill's "urgency measure" status: "The purpose of this act is to allow the State of California to assume responsibility for development and enforcement of occupational safety and health standards under a state plan pursuant to Section 18 of the Federal Occupational Safety and Health Act of 1970 (Public Law 91-596) which was enacted December 29, 1970. Until the provisions of this act become effective, the Division of Industrial Safety will not have the authority and other statutory provisions [sic] to conduct an occupational safety and health program as effective as that of the United States Department of Labor. Employers will continue to be subject to inspection by the federal officials and the authority of the California Division of Industrial Safety will be subject to question until California has an occupational safety and health program as effective as the federal program." (Stats. 1973, ch. 993, pp. 1954-1955.)

[8]This Division policy accords with the mandate of section 6309, which provides (1) that the Division *may* investigate any place of employment which it has cause to believe is unsafe, and (2) that the Division *shall*, within specified time limits, investigate any place of employment about which it has received an employee complaint alleging the existence of an unsafe condition or unsafe conditions.

[9]A "serious violation," as defined in section 6432, "shall be deemed to exist in a place of employment *if there is* a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means,

California Administrative Code, title 8 section 1669, subdivision (a),[10] and proposing a penalty of $600.

Company appealed to the defendant Occupational Safety and Health Appeals Board (hereinafter Board), contesting both the alleged violation and the reasonableness of the proposed penalty. Although Company did not claim or present evidence of prejudice from the two-month delay, the administrative law judge *sua sponte* raised the issue of "reasonable promptness" in the issuance of the citation. Deciding that question adversely to the plaintiffs, the judge vacated the citation and the proposed penalty, a decision which the Board affirmed in its decision after reconsideration.

Plaintiffs thereafter sought by this petition to have the superior court compel the Board to set aside its decision and adjudicate the case on its merits. After a hearing upon the return to the alternative writ, the court made certain findings of fact and conclusions of law and entered judgment denying the petition. This appeal ensued.

## A. Scope Of Review

The manner in which plaintiffs' opening brief frames the issue before us appears to invite a review of the factual determinations made by the administrative law judge and affirmed by the Board. If this were a case calling for such a review of findings, the pertinent inquiry by this court could be of no greater scope than to determine the existence vel non of substantial evidence to support the Board's decision.[11]

---

methods, operations, or processes which have been adopted or are in use, in such place of employment . . . ."

[10] California Administration Code, title 8, section 1669, subdivision (a), provides: "When work is to be performed from thrustouts or similar exposed locations, suitable protection such as temporary guardrailings of wire or manila ropes, or equivalent, shall be provided, or workers shall be protected by safety belts with attached lifeline."

[11] Section 6629 defines the scope of judicial review of Board decisions as follows:

"The review by the court shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether:

"(a) The appeals board acted without or in excess of its powers.

"(b) The order or decision was procured by fraud.

"(c) The order or decision was unreasonable.

"(d) The order or decision was not supported by substantial evidence.

"(e) If findings of fact are made, such findings of fact support the order or decision under review.

"Nothing in this section shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

The trial judge, however, treated the matter as one raising a question of law (calling for statutory construction). We conclude that he did so correctly, for there is no dispute regarding the basic facts, only regarding the legal significance of those facts. (*A. H. Robins Co.* v. *Department of Health* (1976) 59 Cal.App.3d 903, 907 [130 Cal.Rptr. 901].)

## B. REASONABLE PROMPTNESS

■ We are called upon to determine whether the Board acted properly when it found that a citation issued by the Division 60 days after inspection of the accident site was not issued with "reasonable promptness." It therefore becomes necessary to examine section 6317 in light of the statutory scheme of which it is a part, in order to ascertain construction to be given that phrase.[12]

## C. INTERPRETATIONS ADVANCED

The legislative command of section 6317 is: "If, upon inspection or investigation, the division believes that an employer has violated any standard, rule, order, or regulation . . . it shall *with reasonable promptness* issue a citation to the employer.

"
. . . . . . . . . . . . . . . . . .

"No citation or notice shall be issued by the division for a given violation or violations *after six months* have elapsed since occurrence of the violation." (Italics added.)

The Board advances the following interpretation. The purpose of Cal/OSHA is to foster safe working conditions (§ 6300), a goal which can best be attained by preventing hazardous conditions from existing or, if they are already in existence, by requiring their prompt abatement. To

---

[12]Some background information on this dispute is in order. Ever since life was first breathed into the California Occupational Safety and Health Act on January 1, 1974, the Division (the "executive," or enforcement branch) and the Board (the "judicial" branch responsible for hearing appeals from Division action) have been disagreeing over the construction to be given to section 6317's "reasonable promptness" language. A large number of appeals board cases have currently been reported; a number of them have dealt with this issue, with all but a handful disposing of the respective matters upon a finding by the Board that Division did not cite the employer with "reasonable promptness."

achieve this goal the Division is given a vast panoply of powers ranging from the power to issue nonpenalizing warning notices for "de minimis" safety violations (§ 6317), to the ultimate power to terminate an employer's entire operation in cases of imminent hazard to employee safety (§ 6324 et seq.). An offending employer is not required to take any corrective action until the Division has issued a citation. (§ 6317.) The "reasonable promptness" requirement therefore can have but one rational purpose, which is to *require* the Division to proceed with dispatch when it learns of a workplace hazard so that the employer will take corrective measures promptly; this will reduce employee exposure to workplace hazards and ultimately decrease the number of work-related injuries. When the hazard is a serious one as in the instant case, the Board's argument continues, it is particularly important that prompt corrective measures be taken, for the possible harm to employees is that much greater.[13] Since the Division is *required* to proceed with dispatch, it must properly bear the burden of justifying any noteworthy delay between its discovery of a workplace hazard and its issuance of a citation. Finally, the Board argues, the purposes of the act are best served by leaving the issue of "reasonable promptness" to be determined on a case-by-case basis by the administrative law judge, who can best make that determination if he is allowed in each case to weigh the Division's justifications for the delay against the consequences of the delay to employees, to employer, and to the effective promotion of the purposes of the act.[14]

---

[13] The Board's reported cases indicate that it has consistently followed this line of reasoning, i.e., the greater the hazard to which employees are exposed, the more urgent it is that the Division cite the employer promptly and impose upon him the abatement requirement. (Jay-Vee, Inc. (Apr. 16,1975; Cal/OSHA Reporter, ¶ 10,398): "When the severity of the [possible] injury is high, time is of the essence in issuing the citation. The burden is on the Division to prove that they were not dilatory." MacMillan Bloedel Containers, Inc. (June 3, 1975; Cal/OSHA Reporter ¶ 10,435) (Delay in issuance of serious violation citations tends to defeat intent of Labor Code section 6432 in that dangerous practices and/or conditions are then allowed to continue unabated); Zuckerman-Mandeville, Inc. (Aug. 12, 1975; Cal/OSHA Reporter ¶ 10,529): "Time is of the 'essence' in issuing citations. When there is a delay, this delay must be measured against the exposure to the employees.")

[14] In other words, the Board urges that the administrative law judge should not be bound by a fixed rule requiring the employer to show prejudice from the delay. Such a construction accords with the early interpretation given by the Board's federal counterpart, the Occupational Safety and Health Review Commission, to the analogous provision in the federal act. (See Chicago Bridge and Iron Co. (Jan. 23, 1974; 6 OSAHRC 244), reversed in *Brennan* v. *Chicago Bridge and Iron Co.* (7th Cir. 1975) 514 F.2d 1082.) Later Commission rulings have been to the contrary; cf. Todd Shipyards Corp. (Feb. 1, 1977; 5 BNA, OSHC 1012.)

Plaintiffs, on the other hand, urge a more limiting construction. The six-month limitation of section 6317, they argue, should be read as an "equitable limitation," with the result that any citation issued within six months of the inspection must be found to have issued with "reasonable promptness" unless the employer demonstrates prejudice from the delay. This, they assert, is in accord with language contained in the decisions of several federal circuit courts which have dealt with a similar provision[15] in Fed/OSHA.[16] The first such case, *Brennan v. Occupational Safety and Health Review Com'n.* (5th Cir. 1973) 487 F.2d 230, concerned a delay in transmission of an employer's notice of contest to the review commission; the circuit court reversed the commission's action vacating the citation (which had unquestionably been issued within a reasonable time after the inspection), noting that the employer would otherwise "go unpenalized for an admitted serious violation of a safety standard . . . ." (487 F.2d at p. 236.) Next, *Brennan v. Chicago Bridge and Iron Co.* (7th Cir. 1975) 514 F.2d 1082, held that a citation did not have to be issued within 72 hours of inspection to satisfy the "reasonable promptness" requirement, adding: "We do not hold, however, that the Commission is powerless to fashion a rule giving the 'reasonable promptness' language some effect. . . . We simply conclude that the [72-hour] test for determining 'reasonable promptness' used in this case was improper." (514 F.2d at p. 1085.) The most recent case, *U. S. Steel v. Occupational S. and H. Review Com'n.* (3d Cir. 1976) 537 F.2d 780, reflects a repudiation of the "72-hour rule" by still another federal circuit court, holding that a citation for a serious violation would not be vacated on "reasonable promptness" grounds where it had been issued 6 days, rather than within 72 hours, after the inspection of the employer's premises.

## D. Disposition

We find ourselves in agreement with plaintiffs and in disagreement with the Board. It is a perverted sense of justice which punishes the enforcer of a law by permitting its violator to go free. Such is the effect of the Board's rule. While it may have the incidental effect of encouraging

[15]29 United States Code Annotated section 658, subdivision (a): "If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 654 of this title, of any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, he *shall with reasonable promptness* issue a citation to the employer. . . ." (Italics added.)

[16]It also accords with the position currently taken by the federal Occupational Safety and Health Review Commission. (See Todd Shipyards, Corp., fn. 14, *ante.*)

more prompt enforcement action, its primary, immediate and self-defeating effect is to thwart the objectives of Cal/OSHA and to frustrate and dishearten its enforcement personnel, who often, as in this case, may be unable logistically to proceed with the desired alacrity. The losers under such a rule are the members of the class (workers) whom Cal/OSHA is specifically intended to protect; the winners are the offenders. Such a highly distasteful and anomalous result is impermissible.

Far preferable and consistent with the achievement of Cal/OSHA's objectives is the rule advocated by plaintiffs. The state law intends to provide a state occupational and safety program "as effective as" the federal program (see fn. 7, *ante* p. 1000). Inasmuch as no corrective action need be taken absent a citation, Cal/OSHA's commendable purpose of abatement of work hazards will best be served by acceptance and adoption of the modern and more effective federal rule.

We therefore hold that a citation issued within six months of the inspection is deemed issued with reasonable promptness, unless the employer demonstrates prejudice by any delay. The judgment is reversed and the cause is remanded to the trial court with directions to grant the petition for writ of mandate in accordance with this opinion.

Friedman, Acting P. J., and Reynoso, J., concurred.